IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HENRY MITCHELL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-1948-N |
| | § | |
| SECURITIES AMERICA, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

### **ORDER**

This Order addresses Defendants Securities America, Inc. ("Securities America") and Gregg Sautter's (collectively, the "Releasees") motion to enforce the Settlement Order [Doc. 45]. The Court grants the motion.

### I. THE SETTLEMENT

On August 9, 2011, this Court, per Judge Furgeson, approved the proposed class action settlement of all claims involving the Releasees' promotion and sale of securities issued by Medical Capital Holdings, Inc. *See* Settlement Order, Aug. 9, 2011 [2]. The Order certified the "Medical Capital Settlement Class," which includes "[a]ll investors, their successors and assigns, who purchased Medical Capital Notes from [Securities America] and were damaged thereby." *Id.* at 3. The Order also directed class members to dismiss released claims in other forums. *Id.* at 7–8. Specifically, the Order stated:

> 13. All Claims (whether known or unknown), that have been or could have been asserted by, on behalf of, or for the benefit of, or in the name of any Settlement Class Member, whether brought in state or federal court or any other forum, against Releasees, directly or indirectly, based upon, arising out

> of, or related to: (i) an investment or interest in one or more of the . . . Medical Capital Notes, or (ii) the facts, transactions, events, occurrences, acts, or omissions that relate to any of the matters alleged in the Class Actions, are fully and finally released, relinquished and discharged.
>
> 14. . . . [A]ny and all Claims filed by, on behalf of, for the benefit of, or in the name of, any Settlement Class Member(s) in any forum against Releasees are or shall be dismissed with prejudice to the extent they assert the Released Claims.
>
> 15. Settlement Class Members . . . are barred and permanently enjoined from prosecuting, commencing, or continuing any and all Released Claims which they had or have, against the Releasees in any forum.

*Id.* at 7–8.

Dirk Visser and Kimberlee Visser invested in Medical Capital securities and are members of the settling class pursuant to the Settlement Order. The Vissers did not opt out of the class. They received and cashed a settlement check in the amount of $49,212.46.

In November 2010, prior to the issuance of the Settlement Order, the Vissers filed a complaint in Montana state court alleging violations of the Securities Act of Montana related to their purchase of Medical Capital securities (the "Montana Action"). The Vissers served an amended complaint on Sautter in 2013 and continue to pursue state claims in the Montana Action.

The Releasees now ask the Court to enforce the settlement order against the Vissers. The Vissers do not contest that they are settling class members but contend that their claims in the Montana Action are not precluded by the Settlement Order. They argue that the Montana Action raises distinct legal and factual issues and that enforcement of the settlement by this Court is inappropriate under the Anti-Injunction Act and principles of federalism.

## II. THE COURT HAS JURISDICTION
## TO ENFORCE THE SETTLEMENT

"Enforcement of [a] settlement agreement . . . is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). The Supreme Court and the Fifth Circuit have found that a court's "'ancillary jurisdiction' 'to manage its proceedings, vindicate its authority, and effectuate its decrees' provides such an independent jurisdictional basis [but] only if 'the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal.'" *Hospitality House, Inc. v. Gilbert*, 298 F.3d 242, 430 (5th Cir. 2002) (quoting *Kokkonen*, 511 U.S. at 380–81); *see also Disability Advocates and Counseling Grp., Inc. v. E.M. Kendall Realty, Inc.*, 366 F. App'x 123, 125 (11th Cir. 2010) (unpub. and per curiam) ("When a district court's dismissal order either incorporates the terms of the settlement agreement or expressly retains jurisdiction to enforce the settlement, the agreement functions as a consent decree that the district court has jurisdiction to enforce.").

The parties do not dispute that the Settlement Order both incorporated the terms of the settlement agreement and expressly retained jurisdiction to enforce it. *See* Settlement Order, ¶ 25 ("This Court reserves exclusive jurisdiction, without affecting the finality of the judgment entered, over: . . . (d) enforcement of the bar orders and releases set forth in paragraphs 13–18; (e) all Settling Parties for the purpose of enforcing and administering this Settlement Agreement . . . ."). The Vissers argue, however, that this Court cannot enforce the settlement because (1) the Anti-Injunction Act bars the Court from enjoining the Montana

ORDER – PAGE 3

Action, (2) the Court should abstain under *Younger*, and (3) the Court should certify questions of state law to the Montana Supreme Court.  The Court finds that each of these arguments is without merit.  Accordingly, this Court holds that it has jurisdiction to enforce the settlement agreement.

### A.  The Anti-Injunction Act Does Not Bar the Court from Enforcing the Settlement

The Vissers argue that the Anti-Injunction Act prohibits this Court from enforcing the settlement agreement and enjoining the Vissers from maintaining the Montana Action.[1]  The All Writs Act and the Anti-Injunction Act act in concert to define and limit federal jurisdiction over state court proceedings.  The All Writs Act empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.  The Anti-Injunction Act limits the authority granted by the All Writs Act.  Under the Anti-Injunction Act, federal courts may enjoin state court proceedings only "[1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments."  *See* 28 U.S.C. § 2283; *see also Health Net, Inc. v. Wooley*, 534 F.3d 487, 493 (5th Cir. 2008) ("The Anti–Injunction Act generally prohibits federal courts from interfering with

---

[1] Though the Court's injunction enforcing the settlement is directed to the Vissers rather than Montana state court, "'the prohibition of [the Anti-Injunction Act] cannot be evaded by addressing the order to the parties.'"  *In re Prudential Ins. Co. of Am. Sales Ptractice Litig.*, 261 F.3d 355, 364 (3d Cir. 2001) (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)).

proceedings in state court." (quoting *Vines v. Univ. of La.*, 398 F.3d 700, 704 (5th Cir. 2005))).

*1. The "Relitigation" Exception Applies.* – This case falls within the third exception, known as the "relitigation" exception. *Prudential Ins.*, 261 F.3d at 364. The relitigation exception permits the issuance of "injunctions that are necessary 'to protect or effectuate [a court's] judgments.'" *Id.* (alteration in original) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)). Because the exception is "founded in the well-recognized concepts of *res judicata* and collateral estoppel," "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." *Chick Kam Choo*, 486 U.S. at 147–48. But "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action . . . even though the precluded claim was not presented, and could not have been presented, in the class action itself." *Prudential Ins.*, 261 F.3d at 366.

In *Corrugated Container*, the Fifth Circuit considered whether the district court had authority to enjoin plaintiffs in a class action in federal court from pursuing a lawsuit in state court. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1333 (5th Cir. 1981). The Fifth Circuit held that the district court's injunction fell within the relitigation exception because the lower court had approved the parties' settlement. *See id.* at 1335 ("Unless the judgment is set aside on appeal, state proceedings seeking to relitigate issues covered by the federal judgment may be enjoined under the 'protection' exception." (citing *Woods*

*Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286, 1311–1316 (5th Cir. 1971))). The principles of res judicata bar subsequent state litigation over the same claims involved in the federal class action. *Id.* The Fifth Circuit therefore concluded that the Anti-Injunction Act did not preclude the injunction because "there [were] federal judgments that approve[d] some of the settlements and that control the further litigation of the appellant's cause of action." *Id.*

In this case, the Court has issued a final judgment approving the parties' settlement agreement. *See* Settlement Order. As discussed further in Section III, the Vissers' claims in the Montana action are the same as those covered by the Settlement Order. This Court may thus enjoin the Montana action to protect and effectuate the Settlement Order.

*2. The "In-Aid-of-Jurisdiction" Exception Also Applies.* – This case is also within the "in-aid-of-jurisdiction" exception. Courts normally apply the in-aid-of jurisdiction exception only when a state court proceeding "threatens to dispose of property that forms the basis for federal *in rem* jurisdiction." *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 132 (5th Cir. 1990) (quoting *Texas v. United States*, 837 F.2d 184, 186–87 n.4 (5th Cir. 1988)). "The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to [the Anti-Injunction Act] was intended to alter this balance." *Vendo Co. v Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977).

Though this is not an *in rem* action, some courts have applied the "in-aid-of-jurisdiction" exception to enjoin state court proceedings in extraordinary *in*

*personam* cases. *See In re Vioxx Prods. Liability Litig.*, 869 F. Supp. 2d 719, 725 (E.D. La. 2012) (citing *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996)). Several circuit courts, including the Fifth Circuit, have allowed district courts to enjoin state court proceedings where those proceedings are likely to interfere with an imminent or complete settlement. *Id.* at 726. "At this stage the settlement [becomes] a *res* or at least a quasi-*res* and justifies the Court's protection." *Id.* at 726–27 (citing *In re Diet Drugs*, 282 F.3d 220, 236–37 (3d Cir. 2002); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 880–82 (11th Cir. 1989); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Lit.)*, 770 F.2d 328, 336–37 (2d Cir. 1985); *Corrugated Container*, 659 F.2d at 1333).

Judicial efficiency and finality also favor the protection of complex, time consuming settlements from interference by state courts. *Id.* at 726 (citations omitted); *see also Prudential Ins.*, 261 F.3d at 366 (The relitigation exception "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." (quotation marks omitted)). "Finality is a crucial motivating factor for defendants to enter global settlements . . . . If subsequent state court proceedings can functionally interfere with or unsettle a completed settlement . . . it would have a chilling effect on future settlements and interfere with the ability of this Court and others to foster efficient global resolutions in complex [class action] litigation." *Vioxx*, 869 F. Supp. 2d at 728.

These justifications favor protection here as well. The parties, including the Vissers, reached an agreement that disposed of claims against the Releasees. If this Court could not

ORDER – PAGE 7

prevent the Vissers from continuing to litigate the claims at issue in the previous litigation, future class action defendants would have little incentive to settle. The Court finds that it may enjoin the Vissers from such future litigation as necessary in aid of its jurisdiction in this case.

### B. Principles of Federalism Do Not Weigh Against Jurisdiction

The Vissers next argue that this Court should abstain from exercising jurisdiction under the *Younger* abstention doctrine. *See* Resp. 10 [51] (citing *Younger v. Harris*, 401 U.S. 37, 43–55 (1971)). As a general matter, "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358 (1989). But, in *Younger*, the Supreme Court held that federal courts should refrain from interfering with ongoing state criminal proceedings. 401 U.S. at 53–54. The Supreme Court subsequently expanded its holding in *Younger* to limit federal court intervention in certain state civil actions. Specifically, *Younger* abstention bars the exercise of federal jurisdiction in three types of proceedings:

> First, *Younger* preclude[s] federal intrusion into ongoing state criminal prosecutions. Second, certain "civil enforcement proceedings" warrant[] abstention. Finally, federal courts refrain[] from interfering with pending "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (citations omitted).

This case does not fit within these three categories. It is neither a criminal case, nor is it closely related to a criminal matter. *Id.* at 592 ("Our decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings 'akin to a criminal

ORDER – PAGE 8

prosecution' in 'important respects.'" (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975))). It also does not implicate state courts' ability to perform their judicial functions by interfering with a key function of the state court or by preventing a state court from enforcing a state judgment. *See e.g.*, *id.* at 592 (citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977) (holding that a federal court should abstain under *Younger* where a state court party filed a federal action during pendency of state court action to question the constitutionality of the state's statutory contempt procedures); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987) (holding that a federal court should abstain under *Younger* where a defendant in state court proceeding filed action in federal district court to enjoin the state court from enforcing the state court's judgment)).

Moreover, the Court has entered a final judgment, and the state court has not. *Younger* abstention does not require this Court to "abandon jurisdiction it has properly acquired" because the Vissers have subsequently pursued similar claims in state court. *Town of Lockport v. Citizens for Cmty. Action at the Local Level, Inc.*, 430 U.S. 259, 264 n.8 (1977). Rather than preserving the balance between the state and federal courts, the Vissers' suggested application of *Younger* would undermine this Court's ability to enforce its own orders. *See In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1432 (2d Cir. 1993) *overruled on other grounds by Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). The Court holds that *Younger* does not warrant abstention in the present case.

ORDER – PAGE 9

### *C.  There Are No Relevant Questions of State Law to Certify to State Court*

The Court also declines to certify any questions to the Montana Supreme Court. The relevant question before this Court is whether the Settlement Order precludes the Montana Action. The preclusive effect of the Settlement Order is a question governed by federal common law, not Montana law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law." (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–08 (2001))). To the extent this Court must interpret Montana securities laws to determine whether the Settlement Order precludes the Montana claims, Montana law is sufficiently clear "to allow a principled rather than conjectural construction." *Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 549 (5th Cir. 1998) (citations omitted). Accordingly, the Court declines to certify any questions to the Montana Supreme Court.

### III.  THE SETTLEMENT ORDER PRECLUDES THE MONTANA ACTION

As the Court has jurisdiction to enforce the Settlement Order, the Court next determines whether the Settlement Order precludes the specific claims raised in the Montana Action. The Settlement Order prohibits settling class members from pursuing suits in other courts based on "the facts, transactions, events, occurrences, acts, or omissions that relate to any of the matters alleged in the Class Actions." Settlement Order ¶ 13. In this action, the Medical Capital class plaintiffs asserted claims for violations of Sections 12(a)(1), 12(a)(2) and 15 of the Securities Act and negligence arising out of the offering and sale of Medical

Capital Notes by several defendants, including Securities America. Settlement Order ¶ 4. As Sautter is a "Registered Representative" of Securities America, he is also a "Releasee" pursuant to the Settlement Order. Settlement Order 7 n.3. Thus, the Settlement Order precludes actions based on the sale and purchase of Medical Capital Notes by the Releasees.

The Vissers attempt to distinguish their Montana complaint by focusing on their fiduciary relationship with financial advisor Sautter. Resp. 3. They also argue that the Montana Action involves "post-default assurances Sautter made to them that principal balances on the Medical Capital Notes would be paid, interest payments would continue, trustee Wells Fargo's statements were accurate, and the default would be quickly cured." *Id.* But each of the Vissers' theories arises from their investment in Medical Capital Notes through Sautter and involve the "same common nucleus of operative facts" as those in the instant case. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ("Here, the claims asserted . . . arise from the same common nucleus of operative fact as those set forth in [the multidistrict litigation]. Accordingly, we conclude that it was not necessary for the district court to actually exercise subject matter jurisdiction over the claims to approve their release."). "[A] judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action." *Prudential Ins.*, 261 F.3d at 366. That the specific claims raised in the Montana Action were "not presented, and could not have been presented, in the class action itself" does not alter the preclusive effect of the Settlement Order. *Id.* "Under such circumstances the paramount policy of encouraging settlements takes precedence." *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456,

460 (2d Cir. 1982). The Court concludes that the Settlement Order precludes the claims raised in the Montana Action.

## CONCLUSION

For the foregoing reasons, the Court grants the Releasees' motion to enforce the settlement. The Court orders the Vissers to dismiss with prejudice their state court action against Releasees. The Court permanently enjoins the Vissers from pursuing claims related to their purchase of Medical Capital Notes in any other forum.

Signed April 15, 2014.

_____
David C. Godbey
United States District Judge